UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON CARTER,
 #836578,

    Petitioner,                                                  Civil Action No. 15-CV-13200

vs.                                                           HON. BERNARD A. FRIEDMAN

THOMAS MACKIE,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner has filed an application in this matter for a writ of habeas corpus under 28 U.S.C. § 2254. He was convicted after a jury trial in Wayne Circuit Court of two counts of first-degree criminal sexual conduct, in violation of MICH. COMP. LAWS § 750.520b(2)(b), and sentenced to twenty-five to thirty years' imprisonment.

Petitioner raises the following claims: (1) petitioner was denied the effective assistance of trial counsel for his attorney's failure to object to the admission of cell-phone records, (2) petitioner's counsel was ineffective for failing to object to unduly suggestive identification testimony, (3) the prosecutor committed misconduct during closing argument by mischaracterizing the evidence, (4) the prosecutor committed misconduct by calling a witness in rebuttal in violation of a sequestration order, (5) trial counsel was ineffective for failing to conduct an adequate pretrial investigation, and (6) petitioner's appellate counsel was ineffective for failing to raise meritorious claim on direct review. Because all of petitioner's claims lack merit, the Court shall deny the petition. The Court shall also deny a certificate of appealability

and deny leave to appeal in forma pauperis.

**I.** *Background*

       The charges against petitioner concerned allegations that he and co-defendant Michael McReynolds sexually molested two girls, eleven-year-old SG and twelve-year-old AS. AS testified at trial that she lived with her mother at a trailer park in Romulus, Michigan. She was friends with McReynolds. AS met petitioner at the trailer park, and she believed that he was McReynolds' cousin. On May 28, 2011, AS and McReynolds texted each other and agreed to meet at a gap in the fence that separated her trailer park from an adjacent one. When AS arrived with SG, petitioner was at the fence with McReynolds. After watching petitioner and McReynolds play basketball, the group walked to a nearby abandoned trailer.

       AS sat with McReynolds while SG sat with petitioner on the porch of the trailer. AS saw SG performing oral sex on petitioner. Meanwhile, McReynolds was penetrating AS's vagina with his finger. SG told AS to "trade," so she went to petitioner and SG went to McReynolds. AS then performed oral sex on petitioner. AS received a text from her father to go home, so she and SG left and walked to her father's trailer. AS described subsequent text messages containing sexual content she received from McReynolds. AS subsequently told her cousin that she was no longer a virgin, word eventually passed to her father, and he called the police.

       AS acknowledged that she initially lied and said that petitioner and McReynolds forced her to perform sex acts because she had gotten in trouble. She also acknowledged that she lied about petitioner's physical description and about not contacting McReynolds after the incident. AS testified she first saw Petitioner after the incident at the preliminary examination.

2

SG testified at trial that she was eleven at the time of the incident. She met McReynolds and petitioner through AS. On May 28, 2011, she and AS met the two young men at a park. She testified that she and AS later went with McReynolds and petitioner to a porch on a trailer. Petitioner pulled on her arm and she put his penis in her mouth. At some point SG told her to switch with her. SG then sat next to McReynolds, and AS sat next to petitioner. McReynolds kissed her and put his finger in her vagina. AS's father texted, and the girls went home. SG had seen Petitioner before that day, but she could not remember how many times.

Romulus Police Corporal Roger Salwa testified that in the evening on June 20, 2011, he responded to an address in Romulus about a sexual assault. AS was outside with several other adults, who were all upset. McReynolds was present and was arrested. The officers were given a description of the other perpetrator as being a light-skinned black male, 5'3" tall, with a thin build – a description that does not match petitioner.

Sergeant Kevin Ladach testified that Petitioner was arrested on June 28, 2011. No corporeal lineups or photographic lineups were conducted.

Petitioner testified in his own defense. Petitioner testified that he was nineteen years old and lived in Westland. On May 26, 2011, he went to the high school prom. Later that evening he ran into his cousin, McReynolds, whom he had not seen in person for several years, at McReynold's trailer park. Petitioner testified that he had a beard on May 28, 2011. He denied knowing the girls, denied being at the trailer park on May 28, 2011, and denied touching the girls.

Petitioner claimed that on the evening of Saturday, May 28, 2011, he was at a barbecue in Southfield at the home of his friend Eric Pennington. Pennington had picked him

3

up Friday evening, and he remained at the Pennington's overnight Friday and Saturday, leaving on Sunday.

Corinthia Clayton testified that in May 2011, she was living with petitioner and his mother in Westland. She said that on May 26, 2011, petitioner was present at the home in Westland, and sometime after 5:00 p.m., petitioner's friend Eric Pennington came and picked him up.

Vershawn Pennington testified that she had gone to school with petitioner's mother, and she had known him all of his life. Ms. Pennington said that in May 2011, she lived in Southfield, and that on Saturday, May 28, 2011, petitioner and her son Eric were barbecuing at her house. Petitioner arrived Friday night and spent both Friday night and Saturday at her home.

Eric Pennington testified that he picked up petitioner on Saturday, May 28, 2011, and took him to his home in Southfield to barbecue. They arrived there at about 6:00 or 6:30 p.m. Petitioner stayed the night there, and they did not go to Romulus.

Detroit Police Officer Michael McGinnis was called in rebuttal to testify about cell phone records. He reviewed the calls between McReynolds' phone and a number registered to petitioner's mother for the period between April 2, 2011, and May 31, 2011. McGinnis said he found twenty-nine calls between the two numbers. McGinnis testified that no calls originated from Southfield on May 28, 2011, but there were three calls from the Carter phone on that date that originated in Romulus. On the next trial date, McGinnis was recalled, and he testified that his testimony was erroneous and the three calls he mentioned occurring on May 28, 2011, originated in Westland, not Romulus.

4

Meriya McReynolds testified that she was McReynolds' sister. Petitioner was their cousin. She said her father lived in a trailer park in Romulus, and that was where her brother lived. Petitioner frequently visited the trailer park. Ms. McReynolds identified photos from her Facebook page which showed family members at the funeral of her uncle in September 2010. The photos showed petitioner and McReynolds with their arms around each other.

Petitioner was convicted of two counts of first-degree criminal sexual conduct, and he was later sentenced to concurrent terms of twenty-five to thirty years' imprisonment.

Following his conviction, petitioner filed a claim of appeal in the Michigan Court of Appeals raising the following claims:

> I. Where the trial court utilized a non-standard instruction during voir dire which minimized the role of scientific evidence and, in essence, bolstered the testimony of the complaining witnesses and diminished the prosecution's burden of proof beyond a reasonable doubt, was Mr. Carter deprived of his state and federal constitutional rights of due process of law and a fair and impartial verdict, as guaranteed him under the Fifth, Sixth and Fourteenth Amendments, and Const. 1963, Art. 1, §§17 and 20, for it allowed the jury to disregard the lack of forensic evidence when reaching its verdict?
>
> II. Did trial counsel render constitutionally deficient assistance when he failed to object to "expert" scientific testimony from a non-qualified witness? Further, did the trial court reversibly err when it admitted the scientific testimony without a proper threshold inquiry and determination and legal foundation, thereby allowing a non-expert to testify to cellphone and cell-tower technologies, ultimately denying Mr. Carter a fair trial?
>
> III. Are the mandatory, twenty-five year minimum prison terms of MCL 750.520b(2)(b) governing Mr. Carter's convictions cruel or unusual punishment in violation of the Michigan Constitution?

The Michigan Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *See People v. Carter*, No. 311547, 2014 WL 860333 (Mich. Ct. App. Mar.

4, 2014). Petitioner appealed this decision to the Michigan Supreme Court, but his application for leave to appeal was denied by form order. *See People v. Carter*, 852 N.W.2d 621 (Mich. 2014) (Table).

Petitioner then filed his federal habeas petition on September 9, 2015. Petitioner subsequently moved for a stay to permit him to return to the state courts to file a postconviction motion and present additional claims to the state courts. The court granted the motion and held the case in abeyance while petitioner pursued his second round of state court review.

Petitioner returned to the trial court and filed a motion for relief from judgment that raised five claims:

> I. Petitioner's rights were impermissibly infringed where the prosecution engaged in prosecutorial misconduct by misrepresenting and commenting on evidence not presented the jury.
>
> II. Petitioner was denied a fair trial where prosecutor presented a rebuttal witness who was a viewer of three critical stages of proceedings, in violation of sequestration order, violated Defendant's due process.
>
> III. Numerous violations of Defendant's constitutional rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and sections seventeen and twenty of the Michigan Constitution. Defendant's rights were impermissibly infringed where court-appointed trial counsel provided ineffective assistance by failing to conduct pre-trial investigation.
>
> IV. Pre-trial retained counsel rendered constitutionally deficient assistance when preliminary-examination in-court identification was not only impermissibly tainted, counsel failed to object to improper identification procedure.
>
> V. Defendant was denied his Sixth Amendment right to the effective assistance of appellate counsel, and his Fourteenth Amendment right to a full and fair appeal of right where appeal omitted of significant and obvious issues on Defendant's appeal of

>right that were clearly stronger than the issues counsel did raise on
>Defendant's direct appeal.
>
>The trial court held argument on the motion, and then it issued a brief order

denying the motion. (ECF No. 18-14.) Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The court of appeals denied the application for leave to appeal "for failure to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 18-15.) Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but it was also denied by form order. (ECF No. 18-16.)

## II. *Legal Standards*

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is contrary to clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An unreasonable application occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**III.** *Analysis*

**A.** *Ineffective Assistance of Trial Counsel*

Three of petitioner's claims assert that his trial attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment. His first claim asserts that defense counsel failed to object to the admission of cell-phone records. His second claim asserts that his counsel failed to object to unduly suggestive identification testimony. And his fifth claim asserts that his counsel failed to conduct an adequate pretrial investigation regarding the cell phone records.

In *Strickland v. Washington*, 466 U.S. 668(1984), the Supreme Court established the familiar two-prong standard governing these claims.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687. "Whether counsel's performance was 'deficient' under the first prong is determined by reference to 'an objective standard of reasonableness' – specifically, 'reasonableness under prevailing professional norms.'" *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688).

The second prong of the test requires that the defendant affirmatively prove prejudice, meaning that his counsel's errors "must have 'actually had an adverse effect on [his] defense.'" *Id*. (quoting *Strickland*, 466 U.S. at 693). This standard is even more difficult to

8

meet in habeas cases, where the review that applies to *Strickland* claims is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id*. (internal quoation marks and citation omitted). For a state court's adjudication of a *Strickland* claim to be "unreasonable" under 28 U.S.C. §2254(d)(1), it "must have been 'so lacking in justification' that it amounts to 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hendrix*, 893 F.3d at 922 (quoting *Harrington*, 562 U.S. at 103).

**1.** *Failure to Object to Cellphone Records*

Petitioner first asserts that his trial counsel was ineffective for failing to object to the admission of Detective McGinnis' testimony regarding the cellphone calls between petitioner's mother's cellphone and McReynolds' cellphone. The Michigan Court of Appeals found the phone call evidence was properly admitted as a matter of Michigan evidentiary law, and therefore defense counsel was not ineffective for failing to make a meritless objection. That court stated::

> We also reject defendant's argument that the trial court erred in admitting McGinnis's testimony regarding the cell phone records, when no suitable basis for his expertise regarding cell phone technologies had been offered. Defendant did not object at trial to the admissibility of McGinnis's testimony concerning the Metro PCS telephone records, so this issue is unpreserved for appellate review. MRE 103(a)(1).
>
> The decision whether to admit evidence rests within the trial court's sound discretion, and "will be reversed only when there is an abuse of discretion." *People v. Gursky*, 486 Mich. 596, 606 (2010). An abuse of discretion exists when the trial court

9

selects an outcome falling outside the range of reasonable and principled outcomes. *People v. Farquharson*, 274 Mich. App 268, 271 (2007). If an evidentiary issue involves a preliminary question of law, such as whether a rule of evidence or statute precludes the evidence, this Court reviews de novo this legal question. *Gursky*, 486 Mich. at 606. However, this Court reviews unpreserved claims of evidentiary error only to ascertain whether a plain error affected the defendant's substantial rights. *Young*, 472 Mich. at 135, 143.

The trial court did not qualify McGinnis under MRE 702 as an expert in the field of cell phone records and technologies. Consequently, "the admissibility of his opinion [testimony] is governed by MRE 701...." *People v. Daniel*, 207 Mich. App. 47, 57 (1994). Pursuant to MRE 701, a lay witness may offer "testimony in the form of opinions or inferences," provided that the lay witness's opinion or inference testimony (1) rests on the lay witness's rational perceptions; and (2) helps establish "a clear understanding of the witness' [s] testimony or the determination of a fact in issue." *See also Daniel*, 207 Mich. App. at 57 (finding no abuse of discretion in the admission under MRE 701 of a police officer's lay opinion testimony regarding the occurrence of cocaine sales that the officer observed); *People v. Oliver*, 170 Mich. App. 38, 49-51 (1988), *mod in part on other grounds* 433 Mich. 862 (1989) (finding no abuse of discretion in the admission under MRE 701 of two police officers' lay opinion testimony concerning the potential appearance of bullet holes on a car they had examined).

Immediately before McGinnis testified as a rebuttal witness for the prosecutor, the parties placed on the record a stipulation about the cell phone records that were the focus of McGinnis's testimony. The stipulation encompassed that a Metro PCS record custodian had certified that the records consisted of "true copies of all the [call detail] records" pertaining to a cell phone account held by defendant's mother between April 1, 2011 and July 30, 2011. McGinnis explained that cell phone records "have become an intricate part of crime ... investigations," and "a very large part of [his] job" involved cell phone records. McGinnis estimated that his work with the Detroit Police Department's homicide division obligated him to "spend probably 20 to 30 hours a week analyzing phone records, whether it be calls between one number and another number," or identifying "different cell towers that are used to locate where a device might be" or from where a cell phone made a given call. McGinnis's testimony concerning the number

> of calls between the cell phone number sometimes used by defendant and codefendant McReynolds's cell phone number, as well as the location where a few calls were placed, was derived from his personal review of the phone records that the prosecutor had supplied.
>
> For these reasons, we detect no plain error arising from the admission of McGinnis's testimony, because (1) it rested on his own rational perceptions; (2) it had relevance toward defendant's credibility, a material fact, especially after defendant testified that he and codefendant McReynolds, although cousins, did not communicate often; and (3) the review of the cell phone records did not demand "scientific, technical or other specialized knowledge." *Oliver*, 170 Mich. App. at 50. Defense counsel's failure to object therefore did not constitute ineffective assistance of counsel. *Mack*, 265 Mich. App. at 130.

*Carter*, 2014 WL 860333, at *3-4.

The state appellate court's determination that the testimony elicited was permissible lay opinion testimony under Michigan Rule of Evidence 701 binds this Court. Federal courts have no power to intervene on the basis of a perceived error of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The determination that the evidence was properly admitted as a matter of state law eliminates petitioner's ineffective assistance of counsel claim as to this issue. The premise of the claim is that counsel had a valid objection to make regarding the lay opinion testimony, but that premise was conclusively rejected by the state appellate court. Because this court may not second-guess that determination of state evidentiary law, there is no basis on which to find that counsel performed deficiently by failing to object. *See Campbell v. Coyle*, 260 F. 3d 531, 558-59 (6th Cir. 2001). Petitioner's first claim is therefore without merit.

## 2. *Failure to Object to Unduly Suggestive Identification Testimony*

Petitioner next challenges the admission of the victims' identification testimony,

11

asserting that their identification of him at the preliminary examination amounted to unduly suggestive identification procedure. This claim was summarily rejected by the trial court in its opinion denying petitioner's motion for relief from judgment. (ECF. No. 18-14, PageID.1099.)

Failure to move to suppress an unduly suggestive identification can form the basis of an ineffective assistance of counsel claim. A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

In analyzing an unduly suggestive identification procedure, the following five factors have been deemed relevant: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). The reviewing court engages in a balancing test, weighing these five factors against the "corrupting effect of the suggestive identification itself." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

SG testified at the July 6, 2011, preliminary examination that she was staying at AS's home on the weekend of the incident. (ECF No. 18-14, PageID.280-83.) AS introduced

12

her to "Mike" and "D" (petitioner) at the playground by the trailer park. (*Id*., PageID.283-84, 293.) SG identified Mike and petitioner in the courtroom as the two people she saw at the park, expressing no uncertainty. (*Id*. PageID.285-86.) The next day the two girls met Mike and petitioner again and that is when the sexual contact occurred. (*Id*. PageID.313.) SG was only with Mike and petitioner for a short time on both days, and she had never seen him before that weekend or afterwards. (*Id*. PageID.312-14.)

AS testified that on the weekend in question she was staying at her father's home with SG. (*Id*., PageID.319.) That Friday evening she saw "Mike and D" at the park. (*Id*. PageID.320-21.) She testified that she knew Mike, who was her father's best friend's son. (*Id*. PageID.321.) She had never seen petitioner before. (*Id*. PageID.334.) She talked with Mike and petitioner at the park that evening. (*Id*. PageID.321-22.) They returned to the park the next morning and met Mike and petitioner a second time. (*Id*. PageID.322.) AS and SG played together all day, and then they met with Mike and petitioner a third time later that day at the park and watched them play basketball. (*Id*. PageID.323.) When AS and SG left, Mike and petitioner followed them, and that is when the sexual contact occurred. (*Id*. PageID.324-26.) AS then identified Mike and petitioner in the courtroom without expressing any doubt or uncertainty. (*Id*. PageID.328-29.)

Though the identification of petitioner at the preliminary examination was to some extent suggestive, taking into account the totality of the circumstances, the identification by both victims was nevertheless reliable. AS and SG both had excellent opportunities to view petitioner at the time of the crime. They were with petitioner and McReynolds on two or three occasions over the course of two days and interacted with them socially. The circumstances of

13

the social interactions between the four individuals indicate that AS and SG had a high degree of attention. This was not a brief event perpetrated by strangers, but a more prolonged interaction with two young men the two girls had met on at least two occasions that weekend. While AS gave a description of petitioner that apparently was not accurate, at trial it was clear she did not know what the numbers meant in describing a person's height (ECF No. 18-8, PageID.599), and she explained that she intentionally lied because she had gotten in trouble from her family. (*Id*., PageID.628-45.) Both victims expressed a high degree of certainty with respect to their identification of petitioner as one of the perpetrators.

Under these circumstances there was no substantial likelihood of misidentification because the evidence presented demonstrated that petitioner's identification as one of the assailants was reliable notwithstanding the failure to arrange for a line-up prior to the examination. The claim is therefore without merit, and petitioner's counsel was not ineffective for failing to move to suppress.

### 3. *Inadequate Pretrial Investigation*

Petitioner's fifth claim asserts that his counsel was ineffective for failing to conduct an adequate pretrial investigation regarding the cellphone records. This claim was summarily rejected by the trial court in ruling on petitioner's motion for relief from judgment.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Nevertheless, "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303

14

F.3d 720, 748-49 (6th Cir. 2002).

Petitioner asserts that his counsel failed to review the cellphone records prior to trial. The state court record, however, indicates that the prosecutor provided the cellphone records to defense counsel prior to trial. (ECF No. 18-6, PageID.372.) The cellphone records indicated the date and time of calls made between petitioner and McReynolds' cellphones, but the police were unable to retrieve the content of any text messages. (*Id.*) At trial, in arguing against admission of testimony regarding the cellphone records, defense counsel asserted that the form of the records provided to him did not clearly indicate that it contained inculpatory data. Counsel argued that because he was only provided with the raw printout, it was unfair to allow prosecution witnesses to testify about what the records showed. (ECF. No. 18-8, PageID.782-86.)

Petitioner takes this argument as an admission by counsel that he was unprepared to respond to the records. In fact, however, it is apparent that it merely amounted to counsel's best attempt to fashion an argument as to why the evidence should be excluded. (*Id*.) Contrary to petitioner's suggestion, counsel's argument for suppression and his subsequent cross-examination of the officer showed that he was nevertheless familiar with the content of the records. And while defense counsel was unsuccessful in preventing the admission of that testimony, he adequately challenged the evidence on the basis that the prosecutor did not show that petitioner was in possession of his phone when the calls were made. (*Id*., PageID.864-66.) Given that the records were properly admitted as a matter of state law, it is difficult to imagine what else defense counsel could have done with the records, and petitioner does not suggest a better line of defense that was missed. Defense counsel did not perform deficiently in

15

responding to the cellphone evidence.

**B.** *Prosecutorial Misconduct*

Petitioner contends in his third claim that the prosecutor committed misconduct during closing argument by mischaracterizing the evidence. His fourth claim asserts that the prosecutor committed misconduct by calling a witness in rebuttal who was present in the courtroom during other witnesses' testimony in violation of a sequestration order.

"[A] prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (internal quotation marks and citations omitted).

**1.** *Mischaracterizing Evidence*

Petitioner first argues that the prosecutor asserted, without evidentiary support, that petitioner and McReynolds communicated by phone on May 28, contrary to petitioner's testimony. The prosecutor stated: "There was also three calls on May the 28th. Someone with that phone was calling Michael McReynolds on May the 28th. Someone with that phone answered a call in the early, early morning hours of May the 28th at about 12:24 a.m. Someone answered that phone and talked for a minute and two seconds to, to Michael McReynolds." (ECF No. 18-9, PageID.929.)

This argument was based on a reasonable inference from the evidence presented. Detective McGinnis testified that three calls were placed between the two phones on May 28. (*Id*., PageID.866.) The time of the calls came from data on the cellphone records which were admitted as a trial exhibit. (ECF. 18-8, PageID.606.) The argument was not improper.

16

Petitioner also argues that the prosecutor vouched for the victims' credibility. The prosecutor argued that the victims should be believed, in part, because when police arrived at the trailer park SC was interviewed and gave her account separately from AC, and that the two accounts were largely the same. (ECF No. 18-9, PageID.894-95.) This argument was based on the testimony of Officer Salwa regarding police action when they were called to the trailer park. Vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness' credibility or through comments that imply that the prosecutor has special knowledge of facts not in front of the jury. *See Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010). The argument at issue did not constitute improper vouching. Rather, the prosecutor properly argued that the circumstances under which the two victims made their statements to police made their subsequent trial testimony more credible. *See Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008).

Finally, petitioner challenges the prosecutor's arguments that the victims' accounts were consistent. The prosecutor asserted in closing that the two victims' accounts contained the same "order of everything that happened." (ECF No. 18-9, PageID.895.) This assertion was supported by the testimony. AR testified that she went to the park with SG and met petitioner and McReynolds, they watched petitioner and McReynolds play basketball, they all then went to a vacant trailer where McReynolds penetrated AR's vagina with his finger and SG performed oral sex on petitioner, and then the two girls "traded." (ECF No. 18-8, PageID.609-13.) Similarly, SG testified she went to the park with AR where they saw petitioner and McReynolds playing basketball, and afterwards they went to a trailer where she performed oral sex on petitioner while AR and McReynolds were elsewhere on the trailer porch, and that

17

the two girls then switched. (*Id*., PageID.659-66.) The testimony of the victims was therefore similar enough to justify the prosecutor's contention that they recounted the same sequence of events.

As none of the prosecutor's remarks were improper, petitioner has failed to demonstrate that his trial was rendered fundamentally unfair by the conduct of the prosecutor.

## 2. *Improper Rebuttal Evidence*

Petitioner's fourth claim asserts that the prosecutor committed misconduct by calling a witness in rebuttal, Meriya McReynolds, who he claims was present in the courtroom during other witnesses' testimony in violation of the sequestration order.

This claim fails because it cannot be supported by clearly established Supreme Court law. Federal habeas corpus review does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Whether a witness may properly be called on rebuttal is state-law question. *See Slack v. Cason*, 258 F. Supp. 2d 727, 733 (E.D. Mich. 2003); *Plair v. Trombley*, No. 07-CV-10244, 2008 WL 441476, *4 (E.D. Mich. Feb. 14, 2008). Therefore, this claim lacks merit.

## C. *Ineffective Assistance of Appellate Counsel*

Petitioner's final claim is that his appellate counsel was ineffective for failing to raise meritorious claims on direct review. The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) ("[A]ppellate counsel cannot be found to be ineffective for failure to

raise an issue that lacks merit"). As petitioner's post-conviction review claims are without merit for the reasons stated above, appellate counsel was not ineffective for failing to raise them on direct review. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

**IV.** *Conclusion*

For the reasons stated above, the Court concludes that none of plaintiff's claims has merit. Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has failed to make a substantial showing that any of his constitutional rights have been violated.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because any appeal in this matter would be frivolous.

                                                  s/Bernard A. Friedman
                                                  Bernard A. Friedman
Dated: January 11, 2021              Senior United States District Judge
       Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2021.

| | |
|---|---|
| Jason Carter, #836578<br>OAKS CORRECTIONAL FACILITY<br>1500 CABERFAE HIGHWAY<br>MANISTEE, MI 49660 | s/Johnetta M. Curry-Williams<br>Case Manager |